JOHN AMELCHENKO, PLAINTIFF-APPELLANT, CROSS-RESPONDENT, v. BOROUGH OF FREEHOLD, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT, CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1963—Decided November 25, 1963.

Before Judges Conford, Freund and Sullivan.

*Mr. Thomas F. Shebell, Jr.* argued the cause for plaintiff-appellant, cross-respondent (*Mr. Thomas F. Shebell,* attorney; *Mr. Thomas F. Shebell, Jr.,* on the brief).

*Mr. Robert V. Carton* argued the cause for defendant-respondent, cross-appellant (*Messrs. Durand, Ivins & Carton,* attorneys).

The opinion of the court was delivered by

Freund, J. A. D. Plaintiff sued the Borough of Freehold for damages resulting from injuries he sustained when he fell in an unmetered parking lot operated by the borough. The accident occurred on January 21, 1961 at about 10:30 p. m. The parking lot was blanketed with six to eight inches of snow from a storm which began on the 19th and ended on the morning of the 20th. Deep ruts in the snow had been made by cars which had been driven through the parking lot; portions of the snow were frozen over.

Plaintiff testified that he had parked his car in the lot earlier that evening, and was returning to his car when the accident occurred. In describing the occurrence he stated, "I stepped on one of these uneven pieces of ice or snow and my foot went out from under me and when I came down I landed on my ankle and fell on my left side." Two witnesses testified to having found plaintiff lying in the snow. Both supported his testimony as to the ice and deep ruts in the snow and that the light in the area provided less than good visibility. Plaintiff also called as an expert witness an "architectural supervisor," whose work involved designing parking lots and directing their construction. He testified that from his

experience in supervising the clearing of snow from parking lots, it was his opinion that the lot in question could have been cleared in from three to five hours.

The borough's defense consisted of the testimony of two witnesses. The foreman of the street department testified that at the time of the snow storm the borough had the following snow equipment in use: three trucks with snow plows on them, one grader with a snow plow on it, and one front-end loader. The work record indicated that there were 14 men assigned to the job of clearing approximately 30 miles of streets. These men worked in shifts of seven almost continually from 7:30 A. M. on the 19th through midnight of the 21st. During this period each man averaged between 10 and 12 hours of work. On the 22nd, 11 men worked for 10 hours.

Lawrence F. Adams, borough engineer and superintendent of public works, testified to the normal procedures of snow removal followed in Freehold. This involved clearing the main streets first, then the arterial streets, then the balance of the streets, and finally the parking lots. This was the procedure in effect during the January 19–20 snow storm. It is clear from all the testimony that the borough's snow removal crews had not yet begun to clear the parking lot in question at the time the accident occurred.

At the close of all the evidence defendant moved for involuntary dismissal of plaintiff's case, with prejudice, on the ground that plaintiff had not offered proof of the borough's negligence. The motion was granted, judgment for defendant was entered accordingly, and plaintiff now appeals. In its answer defendant had raised the defense of "the doctrine of governmental immunity"; later defendant added, by motion, a defense based upon the statutory grant of governmental immunity, *R. S.* 40:9–2. Before trial commenced the court granted plaintiff's motion to strike both of these defenses, and defendant now cross-appeals from the granting of that motion. Since application of *R. S.* 40:9–2, if proper, would dispose of this case in defendant's favor irrespective of whether the trial judge was correct in entering judgment for defendant with-

out submitting the case to the jury, we will examine that issue first.

■ Defendant's cross-appeal is based upon the contention that the parking lot in question should be considered as having been operated in a governmental, rather than proprietary, capacity and that therefore the borough is shielded from liability by *R. S.* 40:9–2, which reads as follows:

"No municipality or county shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding."

We are urged to apply this statute in light of *Art.* IV, § 7, *par.* 11, of our 1947 *Constitution,* which provides in part as follows:

"The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor."

■ Plaintiff contends that under our decisions the operation of this parking lot must be classified as a proprietary function of the municipality, and that *R. S.* 40:9–2 is for that reason inapplicable. We agree. That statute affords immunity only to those activities of a municipality which can properly be classified as "governmental." *Weeks v. Newark,* 62 *N. J. Super.* 166, 174 (*App. Div.* 1960), affirmed o. b. 34 *N. J.* 250 (1961). We held in *Stringfield v. City of Hackensack,* 68 *N. J. Super.* 38, 45 (1961), certification denied 36 *N. J.* 133 (1961), that the operation of a parking lot by a municipality was a proprietary function for purposes of tort liability. The fact that the parking lot in *Stringfield* was metered whereas the lot in the present case was not, does not change the basic characterization of a municipal parking lot from proprietary to governmental. See *Weeks v. Newark, supra,* 62 *N. J. Super.,* at p. 176.

■ Defendant's contention that *Weeks* should be disregarded in our decision of the instant case because the opinion

in *Weeks* made no mention of the cited constitutional provision must be rejected. The Supreme Court's affirmance of *Weeks* was specifically based upon the opinion of Judge Goldmann rendered in the Appellate Division. As early as 1939 *R. S.* 18:5–30, which is identical to *R. S.* 40:9–2 except that it applies to school districts instead of municipalities or counties, was construed as being inapplicable to proprietary functions. See *Falcone v. Newark Board of Education,* 17 *N. J. Misc.* 75, 77, 4 *A. 2d* 687 (*C. P.* 1939). The Legislature has not changed this statute to require otherwise. *R. S.* 40:9–2 is not, therefore, a law capable of liberal construction in favor of municipalities where proprietary functions are concerned. The trial judge's granting of plaintiff's motion to strike the defenses of governmental immunity and the immunity from liability for personal injury afforded by *R. S.* 40:9–2 was correct.

We thus come to plaintiff's appeal, which is founded on the contention that the evidence he offered at trial was sufficient to present a question of the borough's negligence which should have been resolved by the jury. It is clear from the holding in *Weeks v. Newark, supra,* that insofar as operations which can properly be classified as proprietary functions are concerned, a municipality is liable in tort for the negligent omission to correct a dangerous condition of which it has actual or constructive notice.

The trial judge stated during argument on defendant's motion for involuntary dismissal of plaintiff's case that he thought a jury question would have been presented had not defendant's evidence shown that the borough had 14 men, working in shifts around the clock, on the job of snow removal. It is well settled, however, that the test which should have been applied in a case such as this was not the court's conception of the adequacy of the proofs after weighing the evidence, but rather the condition of the proofs accepting as true all of plaintiff's evidence and giving him the benefit of all legitimate inferences which reasonably could be drawn therefrom in his favor. See *Long v. Landy,* 35 *N. J.* 44, 53–

54 (1961). We find that the motion should not have been granted because reasonable minds, viewing plaintiff's evidence in the manner stated above, could differ as to whether or not the borough's actions conformed to the standard of reasonable care under the circumstances.

It was open to the jury to conclude that the men and machines assigned to the task of overcoming the paralyzing effects of this snow storm were insufficient in number. Or it may have been unreasonable to place this parking lot, which regularly accommodated heavy traffic, in so low a position of priority for clearance, as contrasted, for example, with outlying streets. Or the jury might properly have inferred that the lot should have been closed off entirely until after the snow and ice had been removed, or at least until a path to walk on had been cleared. The lighting in the area where plaintiff fell may have been insufficient. These were all questions of reasonably divergent inferences raised by the evidence presented at trial, and which should have been resolved by the jury.

The trial judge's decision to grant defendant's motion was based upon his belief that plaintiff had failed affirmatively to provide evidence of defendant's negligence, and overlooked defendant's argument, raised again on this appeal, that there was no evidence that the borough had notice of the dangerous condition existing in the parking lot at the time plaintiff was injured. Plaintiff presented evidence, however, and defendant in effect admitted, that the accident occurred a day and a half after the cessation of the snowfall, and more than two days after the storm began. Whether or not these time periods were sufficient, under all the circumstances of the case, to charge defendant with at least constructive notice of the dangerous condition existing in the parking lot was also a question for the jury.

 Our law does not impose upon a municipality a duty so stringent as to require it to remove all ice and snow from public thoroughfares as it is deposited there by the forces of nature. *Bernal v. City of Clifton*, 77 *N. J. Super.* 481, 484

(*App. Div.* 1962), certification denied 39 *N. J.* 469 (1963). In fact, the great weight of authority in this country holds that there is no general duty on the part of a municipality to clear its thoroughfares of snow and ice unless the interference with travel is unusual or exceptional. See Annotation, 39 *A. L. R.* 2*d* 787–792 (1955). But we are concerned here with a parking lot, operated as a proprietary function of the borough, where interference by pedestrians going to and from parked vehicles was obvious and substantial. We have no doubt that in the circumstances presented there was a duty on the part of defendant to exercise ordinary care to make the lot reasonably safe for the use of invitees such as plaintiff. Whether or not the actions taken by the borough were unreasonable under the circumstances and thus constituted a breach of such a duty, were jury questions. Of course, issues such as plaintiff's contributory negligence would also properly be before the jury.

The trial court's granting of plaintiff's motion to strike the two defenses based upon governmental immunity is affirmed. The judgment of involuntary dismissal against plaintiff is reversed and the cause is remanded for a new trial.